1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL A. HAYCOX,

                 Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                 Defendant.

NO.  C10-29-JCC-JPD

REPORT AND
RECOMMENDATION

      Plaintiff Paul A. Haycox appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be REVERSED and REMANDED for further proceedings.

I.      FACTS AND PROCEDURAL HISTORY

      At the time of his administrative hearing, plaintiff was a 40-year-old man with a high

school GED education.  Administrative Record ("AR") at 635.  He had completed some

college coursework toward a possible AA degree.  *Id.*  His past work experience includes

employment as a roofer, taxi driver, resident monitor, and work at a hotel.  AR at 56.  Plaintiff

REPORT AND RECOMMENDATION - 1

was last gainfully employed in the summer of 2004.  He claims an onset date of August 6, 2004.  AR at 13.

On November 29, 2004, plaintiff filed a claim for SSI payments.  On January 24, 2005, he filed an application for DIB.  AR at 13.   Plaintiff asserts that he is disabled due to mental health impairments, a hand injury, and chronic Hepatitis C causing significant fatigue.  AR at 80., Dkt. No. 15 at 2.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 13.  Plaintiff requested a hearing which took place on May 16, 2007.  AR at 647-66.  On October 9, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 13-25.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on November 6, 2006, AR at 5-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.        JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.       STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Haycox bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On October 9, 2007, the ALJ issued a decision finding the following:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2.  The claimant has not engaged in substantial gainful activity since August 6, 2004, the alleged onset date.

3.  The claimant has the following severe combination of impairments: hepatitis C, major depression, and alcohol abuse.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work.

6.  The claimant is capable of performing past relevant work as a hotel manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from August 6, 2004 through the date of this decision.

AR at 15-25.

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

1.  Did the ALJ err in his assessment of the medical evidence?

2.  Did the ALJ err in his assessment of severe impairments at step two?

3.  Did the ALJ err in finding at step 4 that plaintiff could perform past relevant work as a hotel manager?

VII.    DISCUSSION

A.    The ALJ Erred in His Evaluation of the Medical Evidence

1.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Here, plaintiff argues the ALJ erred in his assessment of the opinions of Drs. Lind, Miller, and Freedman, Nurse Werney and Ms. LaHatt.

### 2.    *Ellen Walker Lind, Ph.D.*

Dr. Lind is an examining psychologist who saw plaintiff in October 2004 and September 2006. AR at 214-23. In October 2004, Dr. Lind reported plaintiff had "marked" levels of severity in areas of depression, anxiety or fear, and physical complaints. She also found that he has a moderate level of severity in the area of social withdrawal. Overall, she diagnosed him with a "marked" level of global illness based on intensity and pervasiveness of symptoms and impairment of functioning. She noted plaintiff had dysthmic disorder and ADHD. She also noted there were indications of alcohol abuse. In terms of plaintiff's cognitive abilities, she noted a moderate degree of severity in the areas of his ability to understand and his ability to learn new tasks. She diagnosed him with a "marked" level of severity with functional mental disorder and a "severe" level in his cognitive factors impacting his ability to perform routine tasks. In addition, she found he had a "moderate" level of severity in his ability to appropriately respond to his co-workers and supervisors and his ability to interact appropriately in public, and a marked level of severity in his abilities to respond to and tolerate the pressures and expectations of a normal work setting, and in his ability to care

for himself.  She also reported a mild degree of severity in his ability to maintain appropriate behavior.  AR at 221-22.

Plaintiff has been clean and sober since May 11, 2005.  AR at 651-52, 16.

In September 2006, Dr. Lind saw the plaintiff again.  Dr. Lind reported plaintiff had "marked" levels of severity in areas of depression, anxiety or fear, and social withdrawal.  She also reported he had a "severe" level of severity in his physical complaints, noting specifically plaintiff's hepatitis C and work-related pain and weakness.  Overall, she diagnosed him with a "marked" level of global illness based on intensity and pervasiveness of symptoms and impairment of functioning.  She noted plaintiff had polysubstance dependence but that it was in full remission, as well as dysthmic disorder.  In terms of plaintiff's cognitive abilities, she noted marked limitations in his ability to understand, remember and follow complex instructions, learn new tasks, exercise judgment and make decisions and perform routine tasks.  AR at 215-16.  She also found he had low tolerance for stress, and marked limitations in his ability to relate appropriately to co-workers and supervisors, interact in public, respond appropriately to and tolerate the pressures of a normal work setting, and control physical motor movements and maintain appropriate behavior.  *Id.*

The ALJ rejected Dr. Lind's opinions, assigning them "minimal weight."  AR at 19.  He stated these opinions, and certain others, did not "include any discussion of the effects of the claimant's chronic alcohol and substance abuse on his overall functioning, which calls into question their usefulness.  The one DSHS evaluation that does note the claimant's problems with alcohol abuse reports that if the claimant would stop drinking, he would greatly improve as to his target symptoms."  *Id.*  He also dismissed the reports as merely check-box forms, "with no supporting clinical notes, treatment records or even documentation indicating that the claimant was seen for other than a cursory examination to secure funding."  *Id.*  Neither proffered justification amounts to specific and legitimate reasons for his dismissal of Dr. Lind's opinions.

First, contrary to the ALJ's assertion, Dr. Lind did note the effect of alcohol on the plaintiff.  In her first report in October 2004, prior to the time plaintiff became clean and sober, she acknowledged plaintiff's alcohol problems and abuse and that he self-medicated with alcohol.  AR at 221-22.  Nearly two years later and, as Dr. Lind noted, 16 months after he began his period of sobriety, she examined him again.  She noted his polysubstance dependence in full remission.  She was keenly aware of his prior alcohol abuse, that he had remained sober for this 16-month period, and diagnosed him with this change.  It is sophistry to reject Dr. Lind's opinions for alleged "failure to discuss the effects of claimant's chronic alcohol and substance abuse on his overall functioning."

Second, the generalization that the opinions were simply check-box forms does not withstand scrutiny.  Dr. Lind did use the prescribed forms but also included comments and justifications where sought, as well as where the form did not seek written comment.  Moreover, she included notes reflecting at least one test performed.  AR at 218-19.  Dr. Lind evaluated the plaintiff both before he started his extended period of sobriety and after he had been sober for 16 months.  The ALJ's reasons for rejecting her report do not rise to the level of specific and legitimate reasons supported by the record.

### 3.    Marvin Miller, M.D.

Plaintiff received a psychiatric evaluation by Dr. Miller in June 2005.  AR at 187-89.  Dr. Miller diagnosed plaintiff with major depression (likely recurrent), in partial remission and alcohol/substance dependence (r/o abuse), and personality disorder, with some chronic depressive and possibly schizoid features.  AR at 188.  He also opined that his psychological stressors were severe at the time of the evaluation.  AR at 189.  The ALJ took note of Dr. Miller's opinion, and focused only on the GAF score of 55, which he stated suggested only

"moderate symptoms or moderate impairment in social, occupational or school functioning."[2] AR at 19.

The ALJ's opinion does not make clear whether he accepted, rejected, or accepted only in part Dr. Miller's opinions.  It appears that he relied in part on Dr. Miller's GAF score to conclude that plaintiff had only moderate impairments in social, occupational or school functioning.  However, as noted above, the ALJ ignored the diagnoses of major depression in partial remission and chronic depressive and possible schizoid features.  More importantly, as discussed below, even that portion of Dr. Miller's opinion cited by the ALJ with apparent acceptance — that plaintiff had a GAF score of 55, which according to the ALJ translates into the plaintiff having moderate impairments in social, occupational or school functioning — meant that plaintiff's mental impairments should have been included as a severe impairment. It is not possible to determine, in light of the cursory comments, what weight the ALJ accorded to Dr. Miller's opinions.  Because he was an examining physician, his opinions can only be rejected for specific and legitimate reasons.  The ALJ gave none.  This, too, was error on the part of the ALJ.

### 4.    Evan B. Freedman, Ph.D

The ALJ held an administrative hearing on this matter on May 16, 2007.  AR at 647-66. On October 9, 2007, the ALJ issued his opinion that is the subject of this appeal.  As part of his appeal to the Appeals Council, on November 26, 2007, plaintiff submitted additional evidence consisting of a psychological evaluation issued by Dr. Freedman.  AR at 633-46.  Obviously the ALJ did not have an opportunity to consider this evidence.  However, the Appeals Council considered it, and made it part of the record.  AR at 8.

---

[2] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.

—

1    The law on evidence submitted for the first time to the Appeals Council is less than

2    clear.  The Commissioner cites *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001), in

3    support of the proposition that Dr. Freedman's report should not be considered, arguing that

4    plaintiff did not demonstrate good cause for failing to produce the evidence prior to the

5    administrative hearing.  *Mayes* did not hold that to justify a remand based on new evidence, the

6    claimant had the obligation to show good cause for having failed to produce the evidence at the

7    time of the hearing.  Instead, the Court held it was unnecessary to decide this specific issue

8    because the plaintiff had conceded it was necessary.  *Id.* at 461, n.3.  Having conceded the

9    issue, the Court stated "a claimant does not meet the good cause requirement by merely

10   obtaining a more favorable report once his or her claim has been denied.  To demonstrate good

11   cause, the claimant must demonstrate that the new evidence was unavailable earlier."  *Id.* at

12   463.  On the other hand, the report of Dr. Freedman is already part of the administrative record.

13   It was considered by the Appeals Council and made part of the record when plaintiff sought

14   review.  This action by the Appeals Council makes the report by Dr. Freedman part of the

15   record before this Court.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

16   Here, the Court does not have to decide whether the report of Dr. Freedman, by itself,

17   would justify a remand.  Because this matter is being remanded for errors cited above, and

18   because Dr. Freedman's report is part of the record in this case, the ALJ should consider Dr.

19   Freedman's report as part of his reevaluation of the medical record.

20               *5.    Melinda Werney and Karen LeHatt*

21   Plaintiff claims the ALJ erred in his assessment involving Adult Psychiatric Nurse

22   Practitioner Werney and counselor LeHatt.  The ALJ rejected the opinions of both, because

23   neither included a discussion regarding the effects of plaintiff's chronic alcohol and substance

24   abuse.  Ms. Werney reported improvement with medication, she also released him for

25   Interferon treatment, and neither was considered an "acceptable medical source."  AR at 19.

26

REPORT AND RECOMMENDATION - 11

It is unclear why the ALJ rejected the medical evidence on the basis of failing to include a discussion regarding the effects of plaintiff's chronic alcohol and substance abuse. There is no doubt that all of plaintiff's medical providers, including Ms. Werney and Ms. LeHatt, were aware of this abuse. Indeed, their reports indicated he would improve with abstinence. Consequently, the Court is hard-pressed to understand the ALJ's reasoning. This is particularly true when these providers treated plaintiff both before and *after* plaintiff's period of sobriety.

In addition, the ALJ rejected both as unacceptable medical sources. In order to determine whether a claimant is disabled, an ALJ may consider lay witness sources, such as testimony by nurse-practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such "non-medical" sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").[3] If an ALJ chooses to discount testimony of a lay witness, especially a treating physician's assistant, she must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Id.* at 919.

---

[3] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 12

Reports of improvement and treatment inconsistent with opinions may justify rejection of medical opinions. Accordingly, the reasons offered by the ALJ to discount Ms. Werney and Ms. LeHatt's opinions might ultimately be justified. However, in light of the errors above, the Court is unable to assess whether substantial evidence supports the ALJ's decision. Accordingly, the ALJ is directed to reevaluate these opinions consistent with this opinion.

### 6.   *Conclusions Regarding Medical Evidence*

This matter must be remanded for further evaluation of the medical evidence. In doing so, the ALJ should evaluate the medical evidence in light of the plaintiff's sobriety. The fact that plaintiff has apparently been sober since June 2005 makes reliance on Dr. Michael's opinion, which was issued while plaintiff was actively using alcohol, questionable. The Court recognizes it is the ALJ's function to resolve conflicting or ambiguous medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). However, in doing so, the ALJ must give specific and legitimate reasons for rejecting controverted medical evidence.

### B.   The ALJ Erred at Step Two

At step two, the ALJ found that plaintiff had the severe *combination* of impairments of hepatitis C, major depression and alcohol abuse. AR at 15. Plaintiff claims the ALJ erred by failing to find depression, by itself, was a severe impairment. The materiality of the claim is evident by virtue of the fact that the ALJ found plaintiff's depression to be severe when considered in combination with his alcoholism, but that it caused no more than "slight" limitations on his functioning, independent of alcohol or substance abuse. AR at 19-20.

Step two of the sequential evaluation process requires a claimant to prove that he has a severe impairment or combination of impairments. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability to perform basic work activities.[4] 20 C.F.R. § 404.1521(a), 416.921(a). When an impairment or combination of

---

[4] Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling,

impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate. *Smolen*, 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p, at *1. Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Id*

The ALJ erred. Much of the medical evidence, including the evidence suggesting depression and relied upon by the ALJ to find that depression was a severe impairment in conjunction with his alcoholism, comes from a period of time after plaintiff was substance abstinent, yet the ALJ made no distinction between the two time periods.

The Commissioner argues that this is harmless error at best, because "step two was resolved in his favor" and that it is only a *de minimis* screening device, otherwise handled at step four. The error was not harmless. Step two was not resolved in his favor simply because the disability evaluation did not stop at that step two. The ALJ found no nonexertional limitations in plaintiff's RFC or his ability to work at step four and five based on this severe impairment. On remand, the ALJ should reevaluate plaintiff's severe impairments and in doing so, should also focus on the distinction, if any, of the time period before sobriety and the time period after sobriety.

C.      The ALJ Erred at Step Four

The parties agree that the ALJ erred when he found plaintiff could perform his past relevant work as a hotel manager, management aide or case aide. The Commissioner argues it was harmless error because the ALJ made alternative findings at step five. In light of the errors cited above, the ALJ should reevaluate his findings at step four and five.

---

seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

REPORT AND RECOMMENDATION - 14

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 8th day of September, 2010.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15